## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sir Jackquarius Jaquan Lloyd,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 16, 2019

Court of Appeals Case No.
18A-CR-1135

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-1611-MR-10

**Vaidik, Chief Judge.**

# Case Summary

[1] The State charged Sir Jackquarius Jaquan Lloyd with three counts: murder, felony murder, and Level 3 felony attempted armed robbery. Following a jury trial, the jury found him guilty on all three counts. Lloyd now appeals, arguing that the trial court erred in instructing the jury that he was charged with armed robbery instead of attempted armed robbery and in providing jury-verdict forms for armed robbery instead of attempted armed robbery. Because there is no indication in the record that Lloyd or the jury was confused as to the nature of the charge or that Lloyd was misled as to the theory the State was pursuing, we do not reverse Lloyd's conviction on Count III. However, we remand this case so that the trial court can amend the sentencing order to reflect that Lloyd was convicted of Level 3 felony attempted armed robbery.

# Facts and Procedural History

[2] For his role in the October 2016 shooting death of Tyler Hurtle in South Bend, the State charged Lloyd with three counts: Count I: murder, Count II: felony murder, and Count III: Level 3 felony attempted armed robbery. Appellant's App. Vol. III pp. 65-66. The State also sought a sentencing enhancement pursuant to Indiana Code section 35-50-2-11, which allows for the imposition of "an additional fixed term of imprisonment" on top of the base sentence for certain offenses (including a felony that results in death) if the defendant knowingly or intentionally used a firearm in the commission of the offense.

[3]     In particular, the charging information for Count III, "**Attempted Armed Robbery**," provides:

> On or about October 6, 2016 in St. Joseph County, State of Indiana, Sir Jackquarius JaQuan Lloyd a/k/a Sir Patterson, **did with the intent to commit the crime of Armed Robbery, fire multiple shots at Tyler Hurtle, which conduct constituted a substantial step toward the commission of the crime of Armed Robbery** that is knowingly taking property, from another person or the presence of another person, by using force or by threatening the use of force, said act being committed while the defendant was armed with a deadly weapon.

Appellant's App. Vol. III pp. 65-66 (emphases added). During preliminary instructions, the trial court told the jury that Lloyd had been charged in Count III with armed robbery but then read the charging information for Count III, which set forth the offense of **attempted** armed robbery:

> Count III: On or about October 6, 2016, in St. Joseph County, State of Indiana, Sir Jackquarius Jaquan Lloyd **did with the intent to commit the crime of Armed Robbery, fire multiple shots at Tyler Hurtle, which conduct constituted a substantial step toward the commission of the crime of Armed Robbery**, that is, knowingly taking property from another person or the presence of another person by using force or threatening the use of force, said act being committed while the defendant was armed with a deadly weapon.

Tr. Vol. II pp. 60-61 (emphasis added). The jury was also instructed on the definition of **attempt**. *Id.* at 61 ("A person attempts to commit a crime when, acting with the culpability required for the commission of the crime, he engages

in conduct that constitutes a substantial step toward the commission of the crime."). During opening statement, the State said that Lloyd and others went to the house where Tyler and others lived for a "weed rip, a robbery for marijuana." *Id.* at 78. However, Tyler was shot right outside the house before any marijuana was taken, and Lloyd and the others fled in a car.

[4] During closing argument, the State, on multiple occasions, referenced the offense of **attempted** armed robbery. For example, the State told the jury that Lloyd could be found guilty of Count III as a principal or an accessory:

> Sir Lloyd knowingly or intentionally took a substantial step toward the commission of the crime of Robbery. And that's important. Because just thinking about it, that doesn't get you there. That's not enough to be convicted of a crime. Just thinking about it doesn't get you there. But what does get you there is when you take a substantial step towards the commission of that crime. And we allege the substantial step of shooting is in there. That would be a big step towards the commission of the crime of Armed Robbery. And he did so while armed with a deadly weapon clearly. Now, again that's as a principal.
>
> As an accessory, . . . Sir Lloyd knowingly aided, induced, or caused another person to commit Attempted Armed Robbery. And it is attempted because they were so bad at it they didn't end up getting anything. So that's why it's Attempted Armed Robbery.

Tr. Vol. V pp. 71-72; *see also id.* at 80 ("[A]re you firmly convinced the defendant attempted to commit Armed Robbery? I mean it's just that simple."). During final instructions, the trial court again told the jury that

Lloyd had been charged in Count III with armed robbery but then instructed the jury that there were two ways to find him guilty of **attempted** armed robbery, as a principal or an accessory:

> One, the defendant, Sir Lloyd; two, **acting with the culpability required to commit the crime of Robbery**, which is defined as knowingly or intentionally taking property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear while armed with a deadly weapon; three, **engaged in conduct which constituted a substantial step toward the commission of the crime of Robbery;** four, by shooting multiple times at Tyler Hurtle.

> Or, one, the defendant Sir Lloyd; two, **acting with the culpability required to commit the crime of Robbery** which is defined as knowingly or intentionally taking property from another person or from the presence of another person by using or threatening the use of force or by putting the person in fear while armed with a deadly weapon; three, aided, induced, or caused; four, another person to commit the offense of Attempted Robbery and **whose conduct constituted a substantial step toward the commission of the crime of Robbery**; five, by shooting multiple times at Tyler Hurtle.

*Id.* at 121-22 (emphases added); *see also* Appellant's App. Vol. II p. 111 (written jury instruction). The court then told the jury that if the State failed to prove each of the elements of either set of circumstances beyond a reasonable doubt, the jury must find him not guilty of armed robbery as charged in Count III. Tr. Vol. V p. 122; Appellant's App. Vol. II p. 112 (written jury instruction). However, if the State proved each of the elements of either set of circumstances

beyond a reasonable doubt, the jury may find him guilty of **attempted** armed robbery as charged in Count III. Tr. Vol. V p. 122; Appellant's App. Vol. II p. 112 (written jury instruction). The court again instructed the jury on the definition of **attempt**. Tr. Vol. V p. 124; Appellant's App. Vol. II p. 114 (written jury instruction).

[5] Finally, the court read to the jury the two possible verdict forms for Count III: "Guilty of Count III: Armed Robbery" or "Not Guilty of Count III: Armed Robbery." Tr. Vol. V pp. 130-31; Appellant's App. Vol. II pp. 81, 85 (written verdict forms).

[6] Following deliberations, the jury returned guilty verdict forms for Counts I-III. The jury also found that Lloyd was guilty of the firearm enhancement. At sentencing, the trial court called Count III "attempted robbery." Tr. Vol. V pp. 183 ("On the Attempted Robbery, I considered the fact that this was not your first robbery."), 184 ("Because the reality is as you saw on October 6th that your attempted robbery was failing, you had options. You could have walked away. And instead you very deliberately chose to end a man's life."). The court merged Count II into Count I and sentenced Lloyd to sixty years on Count I, enhanced by fifteen years for the firearm enhancement. The court then sentenced Lloyd to a consecutive term of twelve years on Count III, for an aggregate term of eighty-seven years. The court issued a "Judgment of Conviction & Sentencing Order," which provides that Lloyd was convicted of "Count III: Robbery, a Level 3 Felony." Appellant's App. Vol. II p. 21.

[7] Lloyd now appeals his conviction on Count III only.

# Discussion and Decision

[8] Lloyd contends that the trial court erred in instructing the jury that he was charged with armed robbery instead of attempted armed robbery and in providing jury-verdict forms for armed robbery instead of attempted armed robbery. He asks us to reverse his conviction on Count III and "remand for a new determination." Appellant's Br. p. 17.

[9] "It is a denial of due process of law to convict an accused of a charge not made. Where instructions are given or a verdict is rendered on a particular offense which is not the same as the offense charged reversal usually is warranted." *Maynard v. State,* 508 N.E.2d 1346, 1351 (Ind. Ct. App. 1987) (citations omitted), *reh'g denied*, *trans. denied*. "However, an erroneous judgment of conviction of this type does not always require reversal. 'Where the defendant has not been misled and it is evident that the issues joined under the charging information have been determined, a simple correction of the judgment, rather than reversal, is the appropriate remedy.'" *Id.* (quoting *McFarland v. State,* 179 Ind. App. 143, 384 N.E.2d 1104, 1109-10 (1979)).

[10] We begin by noting that Lloyd had the opportunity to review the jury instructions and verdict forms but raised no objections. *See* Tr. Vol. IV pp. 205-13 (final-instructions conference); Tr. Vol. V pp. 130-31 (reading of verdict forms). Had he done so, the trial court could have easily corrected these

mistakes. While this failure typically waives the issue for review on appeal, Lloyd argues fundamental error.

[11] Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied.* Stated another way, to prevail under our fundamental-error analysis, the defendant must show that, "under the circumstances, the trial judge erred in not sua sponte raising the issue because [the] alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm." *Id.* (quotations omitted).

[12] We find that *McFarland* is instructive here. In *McFarland*, the defendant was charged with attempted armed robbery; however, the jury returned a verdict form finding that the defendant was guilty of armed robbery. We held that reversal of the conviction was not required and instead remanded for correction of the judgment to conform to the charge of attempted armed robbery. *McFarland*, 384 N.E.2d at 1110. We reasoned that the defendant could not have been misled in his defense because the State did not introduce evidence of criminal activity unrelated to the charged offense. *Id.* Moreover, the charging information, which alleged attempted armed robbery, was read to the jury, and the jury instruction defining the elements of the crime properly followed the language of the statute and used the words "committed or attempted to commit" interchangeably. *Id.* Accordingly, we were "assured" that the jury

made a determination with regard to the offense alleged in the charging information. *Id.*

[13] The same can be said here. Lloyd argues that he and the jury were confused as to what he was charged with in Count III—armed robbery or attempted armed robbery. However, the charging information—which set forth the charged offense as attempted armed robbery—was read to the jury. In addition, the jury instructions set forth the elements for **attempted** armed robbery. *See* Appellant's App. Vol. II pp. 111-12. Finally, during closing argument, the State referenced, on multiple occasions, the offense of **attempted** armed robbery. Thus, the jury was told that it had to find that Lloyd attempted to commit armed robbery in order to convict him on Count III. And, as the State claims on appeal, "at no point" was evidence presented that "[Lloyd], or his accomplices, ever took anything from Tyler to complete the robbery." Appellee's Br. p. 19. The trial court recognized as much during sentencing. *See* Tr. Vol. V p. 184. Although Lloyd argues that he was misled as to what theory the State was pursuing, the State made clear during closing argument that it was alleging two theories—principal and accessory—for each of the three counts and that the jury could "pick" which theory it wanted. *Id.* at 68. Accordingly, there is no indication in the record that the jury or Lloyd was confused as to the nature of the charge or that Lloyd was misled as to what theory the State was pursuing. We find that, as in *McFarland*, a simple correction of the judgment, rather than reversal, is the appropriate remedy here. We therefore remand this case to the trial court with instructions to amend the "Judgment of Conviction

& Sentencing Order" to reflect that Lloyd was convicted of Level 3 felony attempted armed robbery.[1]

[14] Reversed and remanded.

Mathias, J., and Crone, J., concur.

---

[1] There is no completed abstract of judgment in the record on appeal. If one was issued, the trial court should make sure that it reflects the proper conviction on Count III.